NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0383n.06

Case No. 21-5724

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 22, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
|  | ) | DISTRICT OF TENNESSEE |
| HOWARD L. YOUNG, | ) | |
| Defendant-Appellant. | ) | |
|  | ) | OPINION |

Before: McKEAGUE, WHITE, and MURPHY, Circuit Judges.

**McKEAGUE, Circuit Judge.** In connection with a far-reaching scheme to defraud severely ill individuals, Defendant pleaded guilty to wire fraud and bank fraud. He now appeals his sentence, alleging ineffective assistance of counsel. As direct appeal is the improper vehicle for this claim, we affirm.

I.

Between 2017-2019, a large group of people with serious illnesses, as well as investors, financial institutions, and others, were defrauded in a scheme involving a fake medical study. Defendant Howard Young was at the center of this scheme. Posing as a "doctor of naturopathy," he induced sick individuals to pay to participate in his "study," oftentimes pressuring them into taking out loans or signing up for credit accounts to do so. Young never fulfilled the promises he made in connection with the study, and he used payments from victims for personal expenses.

Young was charged with six counts of wire fraud, four counts of bank fraud, and one count of aggravated identity theft. On December 10, 2020, Young pleaded guilty to wire fraud, in violation of 18 U.S.C. § 1343, and bank fraud, in violation of 18 U.S.C. § 1344. As part of the plea agreement, the parties agreed to recommend several sentencing enhancements, including a loss enhancement, a multiple victim enhancement, and a sophisticated means enhancement. In addition, the parties acknowledged that a two-level credit against the loss enhancement would apply if Young returned ownership of a property transferred to him by one of the victims via quitclaim deed before sentencing. At sentencing, Young's counsel still had not produced the quitclaim deed, and the district court did not discuss or apply the two-level credit. As an excuse for failing to provide the deed, Young's counsel pointed only to Young's illness and consequent exhaustion, which allegedly prevented Young from giving his counsel the information necessary to create the deed.

## II.

A successful ineffective assistance of counsel claim involves two steps: demonstrating deficient performance on the part of counsel and demonstrating "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In general, direct appeal is an unsuitable mechanism to allege ineffective assistance of counsel, as "[w]hen an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *see also United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010) ("As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record

evidence bearing on the merits of the allegations." (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990))). Such claims are more appropriately raised in post-conviction proceedings before the district court, which is "'the forum best suited to developing the facts necessary to determining the adequacy of representation' because it may take testimony from witnesses including the defendant, prosecution, and counsel." *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012) (quoting *Massaro*, 538 U.S. at 505–06). Thus, only those cases that are "rare exceptions"—where the record is sufficient to analyze the merits of the ineffective assistance claim—are heard on direct appeal. *See United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005).

This case is not one of those rare exceptions. The record has not been adequately developed such that Young's ineffective assistance claim may be properly assessed.

Young alleges two performance deficiencies: (1) counsel's failure to produce the quitclaim deed by the time of sentencing; and (2) counsel's concession of certain enhancements (multiple victims and sophisticated means) in the plea agreement, and his subsequent failure to object to said enhancements during sentencing. The record does not shed adequate light on either of these supposed deficiencies.[1]

Regarding the quitclaim deed, there is little evidence in the record concerning counsel's efforts on that front. All that is apparent from the record is that counsel did not produce the deed by sentencing, and that he attributed that failure to Young's poor health and inability to communicate information needed for the deed. There is no evidence in the record regarding what steps counsel took or whether he could have obtained the information elsewhere.

---

[1] Because we find that the record is insufficiently developed to analyze deficient performance under *Strickland*, it is unnecessary for us to determine whether it supports an analysis of prejudice.

Similarly, regarding the enhancements, there is little evidence related to potential strategy on the part of counsel in making the contested concessions. The plea agreement involved the government dismissing a count of aggravated identity theft under 18 U.S.C. § 1028A, which carries an obligatory consecutive penalty of two years' imprisonment. *See* 18 U.S.C. § 1028A(a)(1), (b). The decision to concede certain enhancements in exchange for dismissing the identity theft count may have been a strategic choice. That choice may or may not have been objectively unreasonable—but the record as it stands does not delve into this issue. *See Ferguson*, 669 F.3d at 763 ("There is also scant information in the record to illuminate whether it might have been sound strategy for defense counsel to allow [the defendant] to enter an unconditional plea. What the record does indicate is that defense counsel and the government negotiated a plea agreement that significantly reduced [the defendant's] potential sentencing exposure."); *Massaro*, 538 U.S. at 505 ("The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse.").

Finally, Young does not even address the issue of adequate record development in his (single) brief, beyond stating generally that: "The existing record is more than sufficient to demonstrate that his attorney did nothing to satisfy the condition of executing a quitclaim deed in exchange for a significant downward Guideline adjustment. The errors involving the Guideline enhancements are likewise discernible from the record." Appellant's Br. at 20. He does not go on to point to specific evidence in the record justifying his conclusion. This showing does not resemble the necessary "substantive argument concerning why the record here is sufficiently developed for us to rule on his ineffective-assistance claim on direct review." *Williams*, 612 F.3d at 508–09.

All told, Young may or may not have a viable ineffective assistance of counsel claim. But the record is too sparse to adequately analyze this issue. We therefore "decline to depart from the general rule that such a claim should be brought as a post-conviction proceeding pursuant to § 2255." *Id.* at 509.

III.

For the foregoing reasons, we AFFIRM the sentence of the district court.